THOMAS, J., for the Court:
IT 1. Robert J. Carrier was found guilty of armed robbery of a convenience store and sentenced to forty-seven years without parole. Aggrieved, Carrier asserts the following issues:
I. THE LOWER COURT ERRED IN DENYING THE MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL.
II. THE LOWER COURT ERRED IN DENYING CARRIER’S REQUESTED JURY INSTRUCTION D-4.
III. THE LOWER COURT ERRED IN DENYING CARRIER’S MOTION FOR A MISTRIAL MADE AFTER THE LOWER COURT MADE DISPARAGING REMARKS AGAINST THE CHARACTER OF CARRIER’S ATTORNEY.
IV. THE LOWER COURT ERRED IN EXCLUDING THE TESTIMONY OF THE PROPOSED WITNESS LOUIE LUZENIA.
Finding no error, we affirm.
FACTS
¶ 2. In September of 1996, Carrier was indicted in the Pike County Circuit Court for armed robbery, which occurred on April 22, 1996. The indictment was amended so as to charge Carrier as a habitual offender pursuant to Miss. Code Ann. § 99-19-81 (Rev.2000).
¶ 3. On October 7, 1996, Carrier escaped from jail and traveled to California. The State of Mississippi immediately began taking the appropriate steps to locate him. In July of 1997, the State learned that Carrier had been arrested in California and was advised by California authorities that Carrier would be released from custody in that State and made available for return to the custody of Mississippi on May 7,1999.
¶ 4. Extradition proceedings were initiated, and the Mississippi Governor’s request for interstate rendition was executed on August 28, 1998. Carrier was returned *1224 to the custody of Mississippi on May 12, 1999. An omnibus hearing was conducted on May 14,1999, and trial was set for June 28, 1999. On July 1, 1999, an order of continuance was granted on the State’s motion, alleging that there was a conflict between the two prosecutors in the case, and trial was rescheduled for September 27,1999.
¶ 5. A pre-trial hearing on motions, including the motion to dismiss for want of a speedy trial, was conducted on August 20, 1999, and trial began on September 27, 1999. On September 28, 1999, a jury returned a verdict of guilty but was unable to agree on the sentence. On October 1, 1999, following preparation and consideration of a pre-sentencing report, the lower court determined that Carrier was a habitual offender and sentenced him to a term of forty-seven years imprisonment without parole as well as a fine and court costs.
ANALYSIS
I. DID THE LOWER COURT ERR IN DENYING THE MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL?
¶ 6. Carrier asserts that he was deprived of his constitutional and statutory rights to a speedy trial because the State of Mississippi delayed the trial for 1,116 days. Carrier admits that not every day of delay was attributable to the State, however, the State was attributable for more than the 270 day statutory and constitutional limits.
¶ 7. Under the test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), four factors are considered in determining if the defendant’s right to a speedy trial has been denied: (1) length of delay, (2) reason for the delay, (3)the defendant’s assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. Our supreme court, in its interpretation of Barker, has held “[t]he weighing of the Barker factors is not a mechanistic weighing. We must look at the totality of the circumstances.” Fleming v. State, 790 So.2d 888 (Miss.App.2001) (citing Herring v. State, 691 So.2d 948, 955 (Miss.1997)).
¶ 8. The United States Supreme Court continued to explain in Barker that:
Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant’s assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Barker, 407 U.S. at 531-2, 92 S.Ct. 2182. The Supreme Court continued to explain that:
Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.
Id. at 532, 92 S.Ct. 2182.
¶ 9. “The weight given each necessarily turns on the peculiar facts and circumstances of each case, the quality of evidence available on each factor and, in *1225 the absence of evidence, identification of the party with the risk of non-persuasion. No one factor is dispositive.” Jaco v. State, 574 So.2d 625, 630 (Miss.1990). Further, the length of delay factor, “alone, is insufficient for reversal, but requires a close examination of, the remaining factors.” Handley v. State, 574 So.2d 671, 676 (Miss.1990).
¶ 10. It is quite evident from the record that Carrier did not desire a speedy trial and, in effect, rejected his right to a speedy trial when he escaped from jail and fled out of the jurisdiction. We are confident that had Carrier remained in prison awaiting trial, he would have received a speedy trial. However, he made the decision to flee and become a fugitive. This factor, the reason for delay, which is entirely of Carrier’s doing, outweighs the factor of length of the delay. This assignment of error is completely lacking in merit.
II. DID THE LOWER COURT ERR IN DENYING CARRIER’S REQUESTED JURY INSTRUCTION D-4?
¶ 11. Carrier asserts that because this case was one based upon circumstantial evidence, he was entitled to a “Two-Theory” instruction. Givens v. State, 618 So.2d 1313, 1318 (Miss.1993); Henderson v. State, 453 So.2d 708, 710 (Miss.1984).
¶ 12. While there was a significant amount of circumstantial evidence indicating Carrier’s guilt, due to the fact that there was an eyewitness to the armed robbery, this was not a case built upon “purely circumstantial” evidence. Therefore, the “Two-Theory” instruction, which is to be given to the jury when the evidence presented is “purely circumstantial,” was properly rejected by the lower court.
III. DID THE LOWER COURT ERR IN DENYING CARRIER’S MOTION FOR A MISTRIAL MADE AFTER THE LOWER COURT MADE DISPARAGING REMARKS AGAINST THE CHARACTER OF CARRIER’S ATTORNEY?
¶ 13. The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant’s case. URCCC 5.15. The granting of a motion for a mistrial is within the sound discretion of the trial judge. Bass v. State, 597 So.2d 182, 191 (Miss.1992). Where “serious and irreparable damage” has not resulted, the judge should “admonish the jury then and there to disregard the impropriety.” Hoops v. State, 681 So.2d 521, 528 (Miss.1996); Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990). The jury is presumed to have followed the admonition of the trial judge to disregard the remark. Dennis v. State, 555 So.2d 679, 682-83 (Miss.1989). See also Lester v. State, 767 So.2d 219, 222-23 (Miss.Ct.App.2000). “An occasional display of irritation, usually regretted as soon as made, does not suffice to show personal bias or prejudice, whether the irritation was justified or not.” McFarland v. State, 707 So.2d 166, 180 (Miss.1997).
¶ 14. Carrier asserts that he was prejudiced by the comments made by the trial judge. After redirect during Carrier’s testimony, the attorney for Carrier stated, “Court’s indulgence, may I visit with my client for just one second?” The prosecutor responded by saying, “I don’t object to it.” The trial judge then responded, “I think it’s obvious why you want to visit with your client. Yeah, you can visit with him about five minutes.” Carrier argues that this statement had the effect on the jury of leading them to believe that the trial judge thought Carrier was committing perjury and that the attorney for Carrier was also untrustworthy. Carrier *1226 moved for a mistrial as soon as it could be done outside the presence of the jury. This motion was summarily denied, and the trial judge instructed the jury to disregard his remark.
¶ 15. While the State admits this exchange of statements, the State also points out the accurate context in which these statements were made. Throughout the cross-examination by the district attorney, Carrier ignored the court’s repeated commands to stop interrupting the district attorney’s questions, to stop answering the district attorney’s questions with questions, and to stop refusing to answer non-self-incriminating questions by “taking the Fifth.” Carrier frustrated the judicial process in this manner until he was found in contempt of court twice. It was at the end of Carrier’s disrespectful responses to the State and the trial judge during the State’s cross-examination that Carrier’s attorney asked permission to speak with his client.
¶ 16. While the trial judge’s statement would have been better left unsaid, it did not constitute reversible error.
IV. DID THE LOWER COURT ERR IN EXCLUDING THE TESTIMONY OF THE PROPOSED WITNESS LOUIE LUZENIA?
¶ 17. During Carrier’s testimony, he claimed the following: that a man named Bullet or Josh looked very similar to Carrier; that Carrier was visiting Bul-leVJosh at a motel. room to buy some drugs from him; that Carrier decided to take a shower in Bullet/Josh’s motel room while Bullet/Josh went out; that Bullet/Josh left the motel in Carrier’s truck; that Bullet/Josh robbed the store, then got into Carrier’s truck just long enough to deposit all of the incriminating evidence in it and left the scene just before the police showed up.
¶ 18. On cross-examination, the State asked Carrier, “Now, where is Bullet from, where is Josh from?” Unresponsively, Carrier answered that he met Bullei/Josh “at a girl’s house,” referring to Tracy Thornton. Later, he testified that Tracy Thornton introduced him to Bullet/Josh at her house.
¶ 19. After Carrier rested his case, the State was permitted to call Tracy Thornton May as a rebuttal witness. Tracy testified that she met Carrier through a friend of hers named Louie Luzenia, and that she did not know anyone named Bullet or Josh, nor did she introduce Carrier to any such person.
¶ 20. The State rested its rebuttal case, and Carrier sought to call Louie Luzenia as a witness in sur-rebuttal to Tracy’s testimony. The attorney for Carrier advised the court that Luzenia would testify that he introduced Carrier to Bullet/Josh at Tracy’s house. The trial judge ruled that Luzenia’s proposed testimony was not rebuttal to Tracy’s testimony, because Tracy testified that she did not introduce Carrier to Bullet/Josh, and there was no mention of whether Luzenia introduced Carrier to Bullet/Josh. “The purpose of rebuttal testimony is to explain, repel, counteract or disprove evidence by the adverse party.” Williams v. State, 539 So.2d 1049, 1051 (Miss.1989). Since the proposed testimony of Luzenia would not have contradicted Tracy’s testimony, it was not rebuttal.
¶ 21. THE JUDGMENTS OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY-SEVEN YEARS AS AN HABITUAL OFFENDER TO RUN CONSECUTIVELY WITH THE SENTENCES IN OREGON, CALIFORNIA AND LOUISIANA AND FINE IN THE AMOUNT OF $10,000 IS AFFIRMED AND OF CONVICTION OF TWO COUNTS OF CON *1227 TEMPT OF COURT AND SENTENCE OF SIX MONTHS ON EACH COUNT TO RUN CONSECUTIVELY TO EACH OTHER AND CONSECUTIVELY TO THE ARMED ROBBERY SENTENCE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS WELL AS $500 FINE ON EACH OF THE CONTEMPT OF COURT CHARGES IS ALSO AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.