# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00584-COA

**JOHN EDWARD DENNIS A/K/A JOHN E. DENNIS A/K/A JOHN DENNIS**  APPELLANT

v.

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT:              04/19/2017
TRIAL JUDGE:                  HON. ROGER T. CLARK
COURT FROM WHICH APPEALED:    HARRISON COUNTY CIRCUIT COURT,
                             SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                             BY: PHILLIP BROADHEAD
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                             BY: KATY TAYLOR GERBER
DISTRICT ATTORNEY:            JOEL SMITH
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED: 12/11/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Edward Dennis was convicted of burglary of an automobile. The trial court sentenced him to serve seven years as a habitual offender in the custody of the Mississippi Department of Corrections (MDOC) without parole. Dennis appeals. Finding no error, we affirm.

## FACTS

¶2.     On the morning of July 28, 2014, Stephen Tapper sat in his gray 2013 Ford F-150 truck, parked in front of his house in D'Iberville, Mississippi. As he sat in his truck, he

realized that his center console had been moved and several items were missing: a laptop, laptop bag, laptop cords, a thumb drive with family photos on it, a Harley Davidson gym bag, gym clothes, headphones, and some cookies.

¶3.     Tapper called the police.  Officer Terry Joiner arrived at the Tapper residence, obtained Tapper's statement, and then examined the vehicle for evidence.  Officer Joiner attempted to lift fingerprints but could not.  While interviewing neighbors, he noted that some residents reported seeing individuals in the nearby wooded area; one neighbor believed his vehicle had been burglarized.  Situated nearby was an unclaimed bicycle.

¶4.     Tapper, owner of a security surveillance company, reviewed his own surveillance footage from the previous night, and saw a man entering his truck and removing several items.  Tapper posted the surveillance video on Facebook asking for help identifying the individual.  Fellow Facebook users responded with calls and texts identifying the defendant as John Dennis.  In one response Tapper received an image of a Facebook photo of Dennis.

¶5.     That afternoon, Officer Lee Donald went back to the Tapper residence to retrieve the surveillance video as evidence.  He also took another statement from Tapper because he had possible suspect information.  After the initial report was completed, Detective Marty Griffin was given the case to investigate further.  On July 29, 2014, Detective Griffin started gathering information about the potential suspect.  After receiving two photographs of the suspect from Tapper, he sent out a press release to the local media outlets in hopes that someone would recognize him.  According to Detective Griffin, these results also indicated

Dennis was the suspect. That same day, Detective Griffin participated in Dennis's arrest.

## DISCUSSION

¶6. On appeal, Dennis argues that the trial court erred by denying his motion for a judgment notwithstanding the verdict (JNOV), and in the alternative, he claims that the trial court erred by denying his motion for a new trial because the jury's verdict was against the overwhelming weight of the evidence. Dennis further argues that the trial court erred in allowing the State's witnesses to identify Dennis in the surveillance video. Finally, Dennis also urges that the trial court erred when it refused Dennis's request for a circumstantial-evidence jury instruction.

### A. JNOV

¶7. "When reviewing a challenge to the sufficiency of the evidence, this Court will reverse and render only if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Hughes v. State*, 983 So. 2d 270, 275-76 (¶10) (Miss. 2008) (internal quotation marks omitted). "This Court considers the evidence in the light most favorable to the State." *Id.* at 276 (¶11). "The [S]tate receives the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id.*

¶8. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Dennis. Dennis asserts the State did not prove that he was the person who committed the crime. At trial, several witnesses identified Dennis in the

courtroom. Officer Joiner testified that he reviewed the video. He saw the suspect gain entry to the vehicle, and he saw the interior light turn on, "which actually illuminated his face and his facial features in the video." Officer Joiner was also able to determine distinct tattoo markings on the suspect, his clothing, and his facial features.

¶9. Tapper's testimony about the surveillance video was similar. He testified that the video showed a white male with dark hair and a "real clear six-point tattoo" enter his vehicle through the driver's-side door, rummage through the vehicle, and take various items. In addition, Tapper explained that when he posted the surveillance video to Facebook, people started "blowing [his phone] up" with calls and texts, which all identified the suspect as Dennis. Tapper also identified Dennis in the courtroom.

¶10. Detective Griffin testified that the information he received as a result of the press release was consistent with the information Tapper received—that the suspect was Dennis. Detective Griffin, who was present during the arrest, testified that he observed Dennis without his shirt on. He physically ascertained that Dennis not only had the distinctive tattoo but also had the same characteristics such as height, weight, build, and facial features as the suspect seen in the video. He identified Dennis in the courtroom.

¶11. On cross-examination, Detective Griffin confirmed that after the arrest they searched the premises, and Detective Griffin did not find the articles of clothing that the person in the video was wearing, namely black shoes and shorts. The officers did not find any of the items reported stolen from the truck. The record is clear that weight and credibility were

4

established during cross examination. The jury could have legitimately believed Detective Griffin to be credible including his identification of Dennis. Officer Donald testified that he also compared still photographs taken from the surveillance video to a Facebook photograph of Dennis, and they appeared to depict the same person—Dennis.

¶12. Finally, the jury was able to view the surveillance video. The jury made its own conclusions of whether Dennis was indeed the person in the video. The video depicts the crime being committed. Taking the evidence in the light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, that Dennis was the person who committed the crime. Accordingly, this claim is without merit.

**B.    New Trial**

¶13. In *Robinson v. State*, 227 So. 3d 423, 425 (¶10) (Miss. App. Ct. 2017) we explained that:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. As such, our scope of review is limited in considering challenges to the weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will constitute an unconscionable injustice.

(citations and internal quotations marks omitted).

¶14. Dennis argues that law enforcement disregarded evidence that may have led to other suspects. For example, Dennis asserts that law enforcement should have (1) investigated the

bicycle that was found in Tapper's yard, (2) followed up on the report of "transient individuals" in the nearby wooded area, (3) investigated the other reported automobile burglary, (4) followed up on the "anonymous tip," and (5) obtained surveillance footage from the carwash.

¶15. The State submits it is not obligated "to present proof of the breadth of its investigation." We agree. "It is necessary but also sufficient that the State present proof that the defendant committed the crime." *Bryant v. State*, 853 So. 2d 814, 820 (¶21) (Miss. Ct. App. 2003). Here, the State presented sufficient proof that Dennis committed the crime. As discussed above, the surveillance video clearly shows Dennis committing the crime. Tapper testified under oath that he received overwhelming responses to his Facebook query that all indicated Dennis. Detective Griffin was able to physically observe Dennis at his arrest within days of the video surveillance tape. The jury was free to accept or reject the witnesses' testimony. *Beasley v. State*, 136 So. 3d 393, 404 (¶36) (Miss. 2014).

¶16. Furthermore, defense counsel was able to question law enforcement regarding the investigation. At trial, Officer Joiner was asked about the "transient" people camping nearby and he explained that "they had no issues with those individuals." Detective Griffin was asked about the bicycle and he explained that he did not feel that it was relevant to the investigation. Detective Griffin also testified that there was no case file opened for the other auto burglary reported because no other information was received.

¶17. Sergeant Zackery Grady with the D'Iberville Police Department testified that he

6

received information from an anonymous tipper concerning a "Kenneth" as another possible suspect and emailed the information to Detective Griffin. Detective Griffin testified that he could not follow up on the tip but believed "Kenneth" and Dennis could have been the same person because he was advised that both individuals lived on Jean Street.

¶18.	Dennis also takes issue with the fact that none of the stolen items were found in his possession, and that the fingerprints on the laptop were not his. However, Detective Griffin testified that Dennis was not arrested at his primary residence. The laptop and computer bag were recovered at Coastal Car Wash in Gulfport, Mississippi.[1] Investigator Christopher Baker testified that he processed the computer for fingerprints, and found two sets; however, none matched Dennis. Investigator Baker also testified that it was not uncommon for someone to handle an object and not leave any analyzable fingerprints. When asked about the video footage from the car wash, Baker admitted not obtaining it. Officer Joiner also confirmed that lifting fingerprints from the console in the truck was not possible due to the "texture of the surface and road dust that was on the vehicle."

¶19.	The record is replete with explanations from law enforcement addressing why it did some things and not others. "[C]onflicts in the evidence, its strengths or weaknesses, are for the jury's consideration. It is the sole judge of the weight and worth of testimony and has the duty to determine the evidence it will accept as true or that which it should reject as untrue." *Whittington v. State*, 377 So. 2d 927, 929 (Miss. 1979).

---

[1] According to Tapper, the car wash is about sixteen to seventeen miles away from Tapper's residence.

¶20. Assessing witness credibility, weighing evidence, and resolving any conflicts in the evidence was the jury's responsibility. Most recently the Supreme Court of Mississippi clarified, "that neither this Court nor the Court of Appeals ever acts as 'juror' on direct appeal. We sit as an appellate court, and as such are ill equipped to find facts. Even if we wanted to be fact finders, our capacity for such is limited in that we have only a cold, printed record to review." *Little v. State*, 233 So. 3d 288, 291 (¶15) (Miss. 2017) (citation and internal quotation marks omitted). We cannot find the jury's verdict contrary to the overwhelming weight of the evidence.

### C. Identification

¶21. Dennis claims that the trial court erred in overruling his objection to the State allowing witnesses to identify Dennis as the suspect in the video in court. Specifically, Dennis asserts that the State's witnesses that identified him at trial as the suspect in the video did not have any more prior familiarity with him than a typical juror and that solely the jurors should have determined whether or not the suspect in the video was Dennis.

¶22. Dennis contends that the State's use of witnesses to prove his identity was inadmissible. Dennis cites to Mississippi Rule of Evidence Rule 701, which states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

8

Dennis argues that the Rule excludes opinion testimony by occurrence witnesses based on mere speculation, conjecture, and assumption because it falls outside of the Rule's requirement of personal observation and familiarity.

¶23.    Dennis cites *Lenoir v. State*, 222 So. 3d 273 (Miss. 2017), for the proposition that the type of lay opinion testimony given during his trial should have been excluded since the witnesses were not sufficiently familiar with Dennis.  In *Lenoir*, a witness was presented to give his opinion of whom he believed was portrayed in a surveillance video of an armed robbery.  *Id.* at 275 (¶6).  The trial court admitted the witness testimony because he was familiar with Lenoir and specifically the way he walked.  *Id.*  The witness opined that it was Lenoir in the surveillance video.  *Id.*  The supreme court upheld the admission of the testimony and held that "Lenoir's claims of lack of sufficient familiarity with how he walked and bias against him were weight-and-credibility issues for him to expose on cross-examination, and not reasons for this Court to reverse the trial court's evidentiary ruling."  *Id.* at 278 (¶18).

¶24.    At the outset, we point out that Dennis only made one contemporaneous objection with respect to Officer Joiner's in-court identification.  At trial, when asked, if he saw the person in the courtroom, Officer Joiner stated that it was "the male sitting at the defendant's table with the white shirt on."  At this time, Dennis objected to "speculation" and the objection was overruled.  On appeal, Dennis refers to *all* of the State's witnesses; however, the record indicates only one objection was lodged for the State witness's in-court

9

identification. "The failure to object to testimony at trial waives any assignment of error on appeal." *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009) (internal quotation mark omitted).

¶25. With respect to Officer Joiner's testimony being allowed, the standard of review of the trial court's decision regarding admission or exclusion of evidence is abuse of discretion. *Clark v. State*, 891 So. 2d 136, 139 (¶11) (Miss. 2004). This Court will reverse the trial court only when the error adversely affects a substantial right of a party and the party claiming error raises an objection at trial. *Busick v. St. John*, 856 So. 2d 304, 308 (¶9) (Miss. 2003).

¶26. Officer Joiner's overall testimony with respect to his role in the investigation is not at issue. Instead, we evaluate whether his in-court identification of Dennis as the suspect in the video falls within the purview of Mississippi Rule of Evidence 701. We find that it does not, and therefore allowing it was error. However, given the weight of the evidence, we find it was harmless. The Mississippi Supreme Court has held that "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." *Clark*, 891 So. 2d at 142 (¶29) (citing *Riddley v. State*, 777 So. 2d 31, 35 (¶12) (Miss. 2000)).

¶27. Here, as stated above, in addition to Officer Joiner, the jury heard from another officer who was present during Dennis's arrest and unequivocally believed that, based on his features, the person that was arrested for the burglary was the same person in the video and in the courtroom. In addition, Tapper testified that his social media inquiry identified only

10

Dennis. And finally, the police independently published a press release to the general public for help, and this inquiry also led to Dennis. Here, if error there be, it does not adversely affect Dennis's substantial right. Furthermore, and perhaps most crucial to the State's case, the jurors were given the opportunity to see the surveillance video footage of the criminal activity, see Dennis, and conclude for themselves, basing on the footage alone, if Dennis was the person in it. Here, as in *Lenoir*, the identification made by the other witnesses raised issues of weight and credibility which are within the province of the jurors to decide. We find if there was error, it was harmless.

### D. Jury Instructions

¶28. Dennis claims the trial court erred in refusing his proposed circumstantial evidence and two-theory jury instructions and takes issue with the given direct-evidence instruction. Our review of jury instructions is well-established.

> In reviewing the grant or denial of jury instructions, this Court considers the jury instructions given as a whole. The trial court may refuse to grant jury instructions that incorrectly state the law, are covered fairly elsewhere in the instructions, or are without foundation in the evidence. If the jury instructions given fairly announce the law and create no injustice, no reversible error will be found.

*Dora v. State*, 20 So. 3d 46, 50 (¶16) (Miss. Ct. App. 2009) (internal citations omitted). This Court has held that a defendant is entitled to these instructions only if the case against him is based "purely or wholly" on circumstantial evidence, as opposed to direct evidence. *Jordan v. State*, 158 So. 3d 348, 350 (¶6) (Miss. Ct. App. 2014). Thus, if there is any direct evidence, neither instruction must be given.

11

¶29.    Dennis argues they must be given since the video does not constitute direct evidence. We disagree.  In *Golden v. State*, 860 So. 2d 820 (Miss. Ct. App. 2003), this Court held that "[v]ideotape evidence submitted to the jury of an accused's unlawful acts constitutes direct evidence." *Golden*, 860 So. 2d at 823 (¶15) (citing *Haynes v. State*, 744 So. 2d 751, 753 (Miss.1999)).  In *Golden*, casino officials discovered that a casino worker's drawer was short over $19,000.  *Id.* at 821 (¶2).  The State presented video footage showing Golden taking the money out of her drawer and delivering it to her sister.  *Id*.  Here, as in *Golden*, the footage showed the actual crime being committed.  In *Moore v. State*, 247 So. 3d 1198, 1202 (¶19) (Miss. 2018), the supreme court recognized that a video capturing the "nefarious misdeeds" is tantamount to direct evidence.

¶30.    Dennis attempts to distinguish his case from *Golden* by arguing that Golden's identity was not at issue. Dennis suggests that absent *proper* identification of Dennis, the video merely depicts the crime occurred and not who did it—which is circumstantial.  We disagree. The video clearly depicted Golden taking money from his employer just as the video in this case clearly depicted John Edward Dennis burglarizing Trapper's vehicle.  The jury had the right to view the video footage and draw its own conclusions. Testimony provided by various witnesses identifying Dennis as the suspect—Facebook posts, public inquiry, officers' testimony—supported the decision of the trial court allowing the direct-evidence instruction and denying circumstantial evidence and two-theory instructions.

¶31.    **AFFIRMED.**

**LEE, C.J., IRVING, P.J, BARNES, CARLTON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.**

**WILSON, J., DISSENTING:**

¶32. The evidence presented at trial was insufficient for a rational juror to find that the State proved its case beyond a reasonable doubt. Accordingly, the conviction should be reversed and rendered. I respectfully dissent.

¶33. The only evidence tying Dennis to the burglary of Tapper's truck is the surveillance video of the crime. Police did not recover any fingerprints from the truck. They did recover three latent prints from Tapper's stolen computer, which was found at a carwash two days later. However, none of the prints was a match for Dennis, and the carwash had no apparent connection to Dennis. No other stolen items were recovered, and there was no physical evidence linking Dennis to the crime.

¶34. Of course, a surveillance video that clearly shows the defendant committing the crime would be sufficient evidence to sustain a conviction. And in its brief on appeal, the State asserts that this "video clearly shows Dennis committing the crime." Having carefully reviewed the video, I cannot agree. The man in the video generally resembles Dennis, but given the quality of the video and the distance from which it was taken, all I can say is that the man in the video might or might not be Dennis. I cannot agree that a rational juror could find *beyond a reasonable doubt* that the man *is* Dennis.

¶35. The State emphasizes that Dennis has a six-point star tattoo on his left shoulder, and

13

the man in the video appears to have such a tattoo. However, I never could have concluded that the man in the video had such a tattoo based on the video alone. From a distance, the tattoo could be a six-point star, but that is all I can say. Moreover, there is no evidence that a six-point star is a unique or unusual tattoo.

¶36. The State also emphasizes that Tapper and three police officers opined that Dennis was the man in the video. However, these witnesses had no "greater familiarity with the defendant's appearance than the jury could possess." *Lenoir v. State*, 222 So. 3d 273, 276 (¶13) (Miss. 2017) (affirming a conviction where three witnesses who knew and were familiar with the defendant identified him in a surveillance video of a robbery). The opinions of Tapper and two officers were based solely on their comparisons of the video to photos of Dennis. One officer (Griffin) participated in the arrest of Dennis and testified that he saw Dennis's tattoos, but that one encounter did not give him any special familiarity with Dennis. Nor did it give him any comparative advantage vis-a-vis the jurors, who were provided with closeup photos of Dennis's tattoos.

¶37. Finally, there was hearsay testimony from Tapper and Griffin that other unidentified tipsters identified Dennis as the man in the video. However, none of these tipsters testified, and the record does not disclose the content or basis of their identifications. This hearsay adds nothing to the strength of the State's case.

¶38. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could

14

have found the State proved each element of the crime." *Id.* at 279 (¶25). But even under this relatively limited standard of review, there must be some evidence of such quality that "a fair-minded, rational juror could find that the State proved its case *beyond a reasonable doubt*." *Id.* at (¶28) (emphasis added). The evidence presented by the State in this case does not permit such a finding. If there were some other evidence linking Dennis to the crime, then Dennis's resemblance to the man in the video certainly could serve as corroborating evidence. But there is no other evidence. The whole case turns on the video.[2] I cannot say that the man in the video *is* Dennis. Indeed, if I were shown a non-suggestive photo lineup that included the man in the video, I would not be able to identify him with any degree of confidence. Nor do I believe that a rational fact-finder could find, *beyond a reasonable doubt*, that the man is Dennis. Rather, there is a substantial risk that the jury reached that conclusion only because three police officers asserted that the man in the video was Dennis. Neither the video itself nor the officers' opinions is sufficient to sustain the conviction. Accordingly, I respectfully dissent.

**GRIFFIS, P.J., JOINS THIS OPINION.**

---

[2] One of the prosecutors made this point in closing argument, stating: "[Defense counsel] is right about one thing. It comes down to the video. And the film does not lie." Thus, this actually is *not* a case in which "we have only a cold, printed record to review." *Ante* at ¶20. Nor are we asked to assess the credibility of witnesses or to resolve "conflicts" in the evidence. *Id.* Indeed, there are no material credibility issues or conflicts in the evidence. For all practical purposes, the video *is* the evidence, and the video simply is what it is, regardless of what any witness said about it. The only question for this Court is whether the quality of the video is such that a rational juror could find, beyond a reasonable doubt, that Dennis is the man shown in the video.

15