# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00528-COA

**TRAMAIN CALLAHAN**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

DATE OF JUDGMENT:            01/23/2018
TRIAL JUDGE:                 HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:   HINDS COUNTY CIRCUIT COURT,
                             FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: ERIN ELIZABETH BRIGGS
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: KAYLYN HAVRILLA McCLINTON
DISTRICT ATTORNEY:           ROBERT SHULER SMITH
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 05/26/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., TINDELL AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Tramain Callahan was convicted of armed robbery by a Hinds County Circuit Court jury and sentenced by the trial court to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with twelve years suspended and eighteen years to serve, and placed on five years of post-release supervision. Callahan filed a motion for judgment notwithstanding the verdict (JNOV), which the trial court denied. Aggrieved, he appeals, arguing that the court erred in refusing the defense's circumstantial-evidence jury instruction. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On September 26, 2013, Richard Norton was working as a cashier at a Shell gas station on Northside Drive in Jackson, Mississippi, when a man walked into the store and passed him a slip of paper that read, "I have a gun. Give me your money." When Norton looked up, the man raised his shirt to reveal a firearm; so Norton proceeded to hand over money from the cash register. The robber told Norton to lie on the floor, and Norton complied.

¶3. The Jackson Police Department (JPD) responded to the crime scene. Norton described the robber as tall, wearing a black shirt, black pants, and a wig or hat on his head. The police viewed the gas station's surveillance video, which depicted a man walking into the store, handing Norton something, and Norton's handing something back to the man. The police released the video to the news media, asking for the public's help in identifying the man. Latricia Black contacted the police, informing them that the person in the video was her boyfriend, Callahan.

¶4. Black and Callahan lived with Black's daughter, Breanna, in an apartment complex adjacent to the gas station. The apartment's manager alerted police that a maintenance man had found a bag near the apartment complex's dumpster containing a wig with attached dreadlocks. Also found near the wig were sunglasses and a piece of paper with Breanna's name on it. Police showed a photograph taken from the surveillance video to Breanna's school principal, who recognized the man in the video as a person who had picked up Breanna from school.

¶5. Callahan was arrested and indicted for armed robbery. Callahan was not present for trial; so the court held the trial in absentia.[1] JPD Detective Felix Hodge testified that he responded to the robbery call on September 26, 2013, interviewing the gas station cashier and recovering the surveillance video. He later talked to Black when she came to the police station to say that she saw the video on the news, and she was able to identify her boyfriend, Callahan, as the man in the video from a six-photo lineup shown to her. JPD Officer Sheneka Freeman also responded to the scene, and she testified at trial that the cashier was able to identify the man in the video as the one who robbed the store, although he could not give her a name.

¶6. JPD Officer Danny Hicks testified that the apartment manager for Hallmark Garden apartments contacted the police, informing them of items discovered by the maintenance man near the apartment complex's garbage dumpster. He contacted Hinds County Undersheriff Cheryl Matory, who testified that she was called to retrieve some items left in an apartment dumpster on Northside Drive, "walking distance" from the crime scene. The items she recovered were a prescription bottle, sunglasses, "a dreadlock wig hat, notebook cover, school papers[,] . . . and 37-live round ammunition." Officer Hicks further stated that one of the papers recovered had Breanna's name on it; so he contacted the girl's elementary school. He showed a photo of the robber to the principal, and she told the officer that the man had been to the school to pick up the child.

---

[1] Callahan was granted bail and released. Although Callahan was present at the pretrial motions hearing on February 8, 2016, he failed to appear for trial on February 9; so the trial court revoked his bond, and a bench warrant was issued for his arrest.

¶7. The gas station cashier, Norton, testified that the man who robbed the station "had the dreads like a Jamaican does, had a skullcap on; had a little band, you know, yellow band on it, braid . . . [and] was in black sweats, about [six-]foot tall; kind of a big guy."

¶8. Black testified that a week or two before the robbery, Callahan had purchased a hat with false dreadlocks at a novelty store. When she saw the video on the news, she recognized the man in the video as Callahan; so she called him to ask if he had robbed the gas station. Although he denied any involvement, Black told him to move out of the apartment, and she immediately went to the police station. She also recognized the sunglasses found in the bag near the dumpster as hers.

¶9. After the State rested, the defense moved for a directed verdict, which the trial court denied. The jury found Callahan guilty of armed robbery, and the trial court sentenced him to thirty years in the custody of the MDOC, with twelve years suspended and eighteen years to serve, and placed on five years of post-release supervision. The trial court denied Callahan's motion for a JNOV, and he appeals from the judgment, claiming that the court erred in refusing his circumstantial-evidence instruction.

## STANDARD OF REVIEW

¶10. This Court reviews a trial court's giving or refusal of jury instructions for abuse of discretion. *Taylor v. State*, 109 So. 3d 589, 595 (¶18) (Miss. Ct. App. 2013) (citing *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012)). "When reviewing the giving or refusal of jury instructions, we do not view the jury instructions in isolation, but instead we consider them as a whole." *Id*. (citing *Rushing v. State*, 911 So. 2d 526, 537 (¶24) (Miss. 2005)).

4

## DISCUSSION

¶11. At trial, the defense proffered Jury Instruction D-6, which provided:

> The [c]ourt instructs the jury that if there is a fact or circumstance in this case susceptible to two interpretations, one favorable and the other unfavorable to the accused, and when the jury has considered said fact or circumstance with all other evidence, and there is a reasonable doubt as to the correct interpretation, then you, the jury, must resolve such doubt in favor of the accused, and place upon such fact or circumstance the interpretation most favorable to the accused.
>
> The [c]ourt instructs the jury that if you can reconcile the evidence upon any reasonable hypothesis consistent with the accused's innocence, you should do so and find him not guilty.

The State argued there was direct evidence—the wig, surveillance video, coupled with Norton's and Black's testimony—of the crime. The trial court refused Jury Instruction D-6, finding that Black's testimony "offered direct evidence that Mr. Callahan was the man in the video." Callahan contends on appeal that the court's refusal of the instruction was error. Specifically, he asserts that because the cashier could not identify him as the robber, and because there was no confession, the evidence was wholly circumstantial.

¶12. The Mississippi Supreme Court has held that "[d]irect evidence . . . must directly and not by inference implicate the accused and not just show that there has been a crime." *Burleson v. State*, 166 So. 3d 499, 509 (¶29) (Miss. 2015). "[E]xamples of direct evidence include an admission or confession by the defendant to 'a significant element of the offense,' or eyewitness testimony 'to the gravamen of the offense charged.'" *Id*. (quoting *Kirkwood v. State*, 52 So. 3d 1184, 1187 (¶10) (Miss. 2011)). Circumstantial evidence is "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference

5

that such fact does exist." *Id.* (quoting *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985)). If there is no confession or eyewitness testimony "to the gravamen of the offense charged, the defendant is entitled to an instruction requiring the jury to exclude every other reasonable hypothesis other than that of guilt before a conviction can be had." *Id.* (citations and internal quotation marks omitted).

¶13. "A two-theory instruction provides that when a jury has considered facts and circumstances along with all other evidence, and every reasonable theory of innocence has been excluded, the jury must resolve the case in favor of the defendant." *Evans v. State*, 119 So. 3d 1084, 1086 (¶10) (Miss. Ct. App. 2013). However, "[t]o receive the two-theory instruction, the evidence must be purely circumstantial and two reasonable hypotheses or theories arising out of the evidence must be presented to the jury." *Johnson v. State*, 235 So. 3d 1404, 1412 (¶24) (Miss. 2017).

¶14. We conclude there was no error in the trial court's refusal of Jury Instruction D-6 because there was direct evidence. Norton was an eyewitness to the "gravamen of the offense charged" and identified the person in the surveillance video as the robber, noting that he was wearing dreadlocks and a cap. *See Carrier v. State*, 815 So. 2d 1222, 1225 (¶12) (Miss. Ct. App. 2001) (rejecting defendant's argument that he was entitled to a "[t]wo-[t]heory" circumstantial instruction as there was an eyewitness to the armed robbery). Furthermore, Black positively identified Callahan from the station's surveillance video. She testified that Callahan had bought a wig with dreadlocks, similar to the one worn in the video, a couple of weeks before the robbery.

¶15. Callahan also argues that the surveillance video failed to show a crime being committed; thus, it failed to "capture the 'gravamen of the offense charged.'" We find no merit to this argument. In *Dennis v. State*, 271 So. 3d 722, 729 (¶30) (Miss. Ct. App. 2018), a defendant challenged the use of a video as direct evidence, claiming that the video showed that a crime occurred but not who committed it. This Court found no merit to the defendant's contention, holding, "The jury had the right to view the video footage and draw its own conclusions. Testimony provided by various witnesses identifying [John] Dennis as the suspect—Facebook posts, public inquiry, officers' testimony—supported the decision of the trial court allowing the direct-evidence instruction and denying circumstantial evidence and two-theory instructions." *Id.* As stated, Norton testified as to the events shown in the video, clearly stating that an armed robbery had occurred, and the jury in this case was allowed to watch the surveillance video, consider Norton's and Black's testimony, and draw its own conclusions.

¶16. "If any evidence qualifies as 'direct' evidence, a circuit court may refuse a circumstantial-evidence instruction." *Allen v. State*, 111 So. 3d 679, 684 (¶10) (Miss. Ct. App. 2013) (citing *McInnis v. State*, 61 So. 3d 872, 876 (¶13) (Miss. 2011)). Finding no reversible error in the trial court's refusal of the defense's circumstantial-evidence instruction, we affirm.

¶17. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**