# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00226-SCT

*LATERRENCE LENOIR a/k/a LATERRENCE A.*
*LENOIR a/k/a LATERRENCE AWSON LENOIR*
*a/k/a LATERRANCE LENOIR*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 01/19/2016 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     This case involves Mississippi Rule of Evidence 701. Under this rule, when a fact

issue exists about who is portrayed in a surveillance video, a witness with greater familiarity

with the defendant than the jury could possess may offer an opinion that the defendant is the

person in the video.[1]  In this case, Laterrence Lenoir was claimed to be one of the armed robbers captured on surveillance video.  So under Rule 701, the trial judge was within his discretion to admit testimony from witnesses familiar with Lenoir that, in their opinion, Lenoir was one of the robbers in the video.  Thus, we find no error in the trial judge's admission of this testimony, nor do we find error in the judge's denial of Lenoir's motion for new trial.  We therefore affirm Lenoir's convictions and sentences.

### Background Facts and Procedural History

### I.    Armed Robbery

¶2.    Surveillance video showed that, on the evening of September 7, 2013, a man approached the front door of the Dollar General in Brookhaven, Mississippi.  He looked inside and then walked away.  The man soon returned with a second man wearing a mask.  After the two men entered the store, the first man pulled a mask over his face too.  The first man was carrying a pistol.  And the second man was carrying a sack.

¶3.    There were two employees in the store that night, Shanti Freeman Nettles and Kaitlynn Calcotte.  Their manager, Jessica Odom, had instructed Nettles to open the safe early, so she and Calcotte could go home.  When the two robbers showed up, Nettles was in the office counting the money in the safe.  Calcotte was at the register.  When she saw the two masked men, she went into the office with Nettles.

---

[1] *Bennett v. State*, 757 So. 2d 1074, 1076 (Miss. Ct. App. 2000) (citing *United States v. Jackman*, 48 F.3d 1, 4-5 (1st Cir. 1995)).

¶4.     The video showed the two men followed Calcotte to the office. The first man pointed his pistol at them, and Nettles and Calcotte handed over their personal money and their cell phones. Then, at the direction of the second man, they handed over the money from the safe.

## II.     Investigation

¶5.     After the robbers left, Nettles and Calcotte called 911. Captain Byron Catchings with the Lincoln County Sheriff's Department was tasked with investigating the robbery. During his investigation, Lenoir had surfaced as a person of interest. So Catchings began surveilling him. Based on his personal observations of Lenoir, Catchings concluded Lenoir was the first man in the video. Lenoir was charged with two counts of armed robbery and one count of conspiracy to commit armed robbery.

## III.    Trial and Conviction

¶6.     At trial, Catchings testified about his investigation and his identification of Lenoir as the first man in the video, which was played for the jury. The State also called two other witnesses familiar with Lenoir—Willie Butler and Greta Mathis. Willie Butler's niece had dated Lenoir. At the time of trial, Butler testified he had known Lenoir for "possibly two years." Butler testified he recognized Lenoir as the man in the video based on "his body and his walk." He also testified he had seen Lenoir's face at the beginning of the surveillance video. Greta Mathis, like Butler, was related to Lenoir's girlfriend. She testified she also recognized Lenoir as the man in the video "just [by] the way he walk[ed]."

¶7.     The State called a third witness familiar with Lenoir—Jeffery Thomas. Thomas went to church with Lenoir. Before trial, Thomas had given a statement identifying Lenoir as the

3

man in the video. But at trial, he said he had given this statement under pressure. Thomas testified he did not know who it was in the video because it was too blurry make an identification. Odom, the Dollar General manager, testified on behalf of Lenoir. She said she had watched the surveillance video, and the man in the video was not Lenoir. Lenoir himself testified, denying any involvement in the robbery.

¶8.    At the close of trial, the jury found Lenoir guilty of all three counts.

### IV.    Appeal

¶9.    After his motion for a new trial was denied, Lenoir timely appealed. On appeal, he raises two issues:

(1)    The trial court erred in admitting the nonspecific, nonsubstantive identification of Lenoir by Butler and Mathis based solely on the purported way Lenoir walked.

(2)    Lenoir's convictions are against the overwhelming weight of the evidence.

### Discussion

### I.    Admission of Identification Testimony

¶10.    Lenoir first argues the trial court reversibly erred when it admitted Butler's and Mathis's testimony identifying Lenoir as one of the robbers in the video.

¶11.    Before trial, Lenoir had filed a motion in limine to exclude Butler's and Mathis's identifications.[2] But the trial court overruled Lenoir's motion, finding the lay opinion testimony admissible under Mississippi Rule of Evidence 701. Rule 701 provides: "If a

---

[2] Lenoir's motion in limine did not seek to exclude Catchings's identification testimony. Nor did Lenoir object at trial when Catchings testified he thought Lenoir was the first man in the video, based on his observations of him.

4

witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Butler's and Mathis's opinions were based on their personal perception of how Lenoir walked. And due to the grainy quality of the video, the trial court determined their identifications were helpful to determining a fact in issue. So their testimony met the requirements of Rule 701.

¶12. While Lenoir now asserts the trial court reversibly erred, the admission of testimony is within the sound discretion of the trial court. *Bishop v. State*, 982 So. 2d 371, 375 (Miss. 2008). And after review, we find no abuse of discretion in admitting this testimony.

¶13. While this Court has yet to address the admissibility of opinion testimony identifying a person in a video under Rule 701, the Mississippi Court of Appeals has. In *Bennett v. State*, 757 So. 2d 1074, 1076 (Miss. Ct. App. 2000), the Court of Appeals looked to other jurisdictions that had addressed this issue, finding "a majority view has developed that, at least under certain circumstances, such opinion evidence may be admitted to aid the jury." Particularly instructive was the federal case *United States v. Jackman*, 48 F.3d 1 (1st Cir. 1995). In *Jackman*, the First Circuit "concluded that [opinion identification] evidence ought to be admitted in any circumstance where it can be demonstrated that the witness has a greater familiarity with the defendant's appearance than the jury could possess and the recorded likeness is not either (a) so unmistakably clear, or (b) so hopelessly obscured, that

5

the witness is no better suited than the jury to draw a meaningful conclusion as to the identity of the person depicted." ***Bennett***, 757 So. 2d at 1076 (citing ***Jackman***, 48 F.3d at 4-5).

¶14. Applying this principle to ***Bennett***'s facts, the Court of Appeals held it was error for the trial court to exclude the defendant's mother's opinion testimony that her son was not the man selling drugs in a video the State had introduced. ***Id.*** at 1077. In that case, "there was a legitimate issue of identification of the [defendant] as the person carrying out the videotaped drug transaction." ***Id.*** And the court found "[t]hat is the very circumstance in which opinion evidence may properly be received from witnesses who, by their previous acquaintance with the [defendant], have some greater ability to identify him in a photograph or videotape than would a typical juror having no previous involvement with the [defendant]." ***Id.*** Because the defendant's theory was mistaken identity, the Court of Appeals held the defendant's mother should have been permitted to testify "she had viewed the videotape, and based upon her intimate familiarity with her son, was of the opinion that the person carrying out the drug transaction was not Cavaleer Bennett." ***Id.***

¶15. We agree with the Court of Appeals. "When there is a genuine issue of fact as to who is actually portrayed in a photograph or videotape, it is that sort of lay opinion evidence that can prove 'helpful' to the jury within the meaning of Mississippi Rule of Evidence 701." ***Id.*** In this case, the video was neither "so unmistakably clear" that no identification testimony was needed nor "so hopelessly obscured, that the witness is no better suited than the jury to draw a meaningful conclusion as to the identity of the person depicted." ***Id.*** at 1076. So the

6

trial court was within its discretion to admit testimony by "a witness [who] has greater familiarity with the defendant's appearance than the jury could possess." *Id.*

¶16. On appeal, Lenoir concedes "the law is fairly well settled that lay witnesses can offer opinions concerning the identity of someone on a video." Still, he insists Butler's and Mathis's opinions do not pass muster under Rule 701, because—in contrast with the mother in **Bennett**—they were not sufficiently familiar with Lenoir to offer such an opinion.[3] But we find the level of familiarity with Lenoir goes to the *weight* and *credibility* of their opinion testimony, not its admissibility. Rule 701 requires lay opinion testimony to be "rationally based on the perception of the witness." M.R.E. 701. And both Butler and Mathis testified their opinions were grounded in their observation of how Lenoir walked. Thus, we find no abuse of discretion in the trial court's permitting Butler and Mathis to testify they had viewed the video and, based on their familiarity with how Lenoir walked, were of the opinion the first man in the video was Lenoir. *Cf. id.*

¶17. Nor do we find, as Lenoir contends, the probative value of this admissible evidence was outweighed by the danger of unfair prejudice. *See* M.R.E. 403. Undoubtedly, this evidence had probative value, as it went to the key factual issue at trial—whether Lenoir was

---

[3] Lenoir argues their alleged lack of sufficient familiarity with him meant their testimony could not pass through Rule 602's filter. *See* M.R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). But Lenoir never raised a Rule 602 objection to Butler's and Mathis's identification testimony in his motion in limine or at trial. So this particular objection is waived. *See* **Ballenger v. State**, 667 So. 2d 1242, 1266 (Miss. 1995) ("The assertion on appeal of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal."). Moreover, both witnesses testified they were personally acquainted with Lenoir and could recognize him by the way he walked, thus satisfying Rule 602's threshold requirement.

in fact the first man in the video. And Lenoir's argument for why the evidence is unfairly prejudicial—Butler's and Mathis's bias against him—goes to the weight the jury ought to have given the evidence, not its admissibility. *See id.* (finding "questions of bias, even if evident on their face, go to the issue of the weight the jury ought to give the evidence and do not affect its admissibility").

¶18. In other words, we find Lenoir's claims of lack of sufficient familiarity with how he walked and bias against him were weight-and-credibility issues for him to expose on cross-examination, and not reasons for this Court to reverse the trial court's evidentiary ruling.

## II. Weight of the Evidence

¶19. Lenoir's only other claim on appeal is that he is entitled to a new trial based on the weight of the evidence.

¶20. When reviewing the denial of a motion for new trial, we weigh the evidence in the light most favorable to the verdict and "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005). With this standard in mind, we find no reason to disturb the jury's verdict.

¶21. The jury heard admissible testimony from three witnesses—Catchings, Butler, and Mathis—that Lenoir was one of the men in the video robbing the Dollar General employees at gunpoint. The jury also watched the video. Catchings further testified about his investigation and the other facts that led him to conclude Lenoir was one of the men who robbed the Dollar General. Of course, the jury also heard from a witness who testified

8

Lenoir was not the man in the video and another witness who testified the video was too blurry for him to make an identification. And Lenoir himself also testified in his defense. But "[t]his Court has in numerous cases, too many to mention, said that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980).

¶22. By finding Lenoir guilty, the jury obviously believed Catchings's, Butler's, and Mathis's identifications were more credible. Viewing this evidence in the light most favorable to the verdict, we cannot say that the evidence preponderates heavily against the jury's decision to find Lenoir guilty of all three counts. Thus, we find the trial judge did not abuse his discretion when he denied Lenoir's motion for a new trial.

### III. Sufficiency of the Evidence

¶23. Finally, we address the dissent's contention that the evidence was legally insufficient to support the jury's verdict. We begin by emphasizing Lenoir has not raised this issue on appeal. Rather, the dissent has injected this issue *sua sponte*.

¶24. The dissent actually agrees there was no error in the judge admitting testimony from three different witnesses who identified Lenoir as one of the robbers captured on the surveillance video. But it then chooses to invoke its own plain-error challenge to the sufficiency of what it concedes was admissible evidence identifying Lenoir as the robber. In doing so, it improperly acts as a thirteenth juror and proceeds to reevaluate the evidence in the wrong light. Instead of reviewing the evidence in the light most favorable to the

9

State—as precedent requires—it eyes the evidence in the light most skeptical to the State. This approach is inappropriate.

¶25. "The ***Bush v. State*** test for sufficiency of the evidence is familiar." ***Poole v. State***, 46 So. 3d 290, 293 (Miss. 2010) (citing ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005)). When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime. ***Id.*** "We are not required to decide—*and in fact we must refrain from deciding*—whether *we think* the State proved the elements." ***Id.*** at 293-94 (emphasis added). "Rather, we must decide whether a reasonable juror could rationally say that the State did." ***Id.*** at 294.

¶26. Here, the dissent finds, on plain-error review, that the sufficiency-of-the-evidence test was not met. But in doing so, the dissent does not *refrain* from deciding whether it thinks the State proved its case beyond a reasonable doubt. Instead, the dissent actively reevaluates the sufficiency, weight, and credibility of the evidence anew—even going so far as to discredit any reliance by the jury on Catchings's, Butler's, and Mathis's identifications based on the dissent's personal take on the video.

¶27. Presiding Justice Dickinson bases his dissent on his personal view of the surveillance video. Because *he* personally could not distinguish the robber's "nose from his mouth," because *he* found the robber's clothes to be "unremarkable," and because *he* could discern "[n]othing distinguishing or unusual . . . about the walk of the person in the video," he declares the evidence is therefore legally insufficient "in his view."

10

¶28. This is contrary to our standard of review. Appellate judges simply may not ask whether *we think* Lenoir was proven guilty beyond a reasonable doubt. Nor may we consider the evidence in the light least favorable to the State. Instead, precedent mandates we view the evidence *in the light most favorable to the State* and ask whether a fair-minded, rational juror could find the State proved its case beyond a reasonable doubt.

¶29. In other words, we are without authority to review the surveillance video and ask ourselves whether *we think* Catchings's, Butler's, and Mathis's identifications of Lenoir were credible in light of the video quality and physical characteristics of the robbers. This is because "the jury [is the] sole judge of the credibility of witnesses and the weight and worth of their testimony." ***Roberson v. State***, 199 So. 3d 660, 670 (Miss. 2016). And here, the jury heard admissible testimony from three witnesses that Lenoir was one of the men in the video robbing the Dollar General employees at gunpoint. The jury also watched the video themselves. Though Thomas testified the video was too blurry for him to identify anyone, it was the jury's job *exclusively* to determine the weight and credibility of the identification testimony.

¶30. Again, by finding Lenoir guilty, the jury obviously found Catchings's, Butler's, and Mathis's identifications to be credible. We have been crystal clear that "[a] jury's resolution of such factual determinations must be respected where, after reviewing all the evidence *in the light most consistent with the jury's finding*, we conclude there was sufficient evidence to support the finding." ***Boyd v. State***, 977 So. 2d 329, 336 (Miss. 2008) (emphasis added).

Here, viewing the evidence in the light most consistent with the guilty verdict—and not adverse to it—there is sufficient evidence to support the jury's guilty verdict.

**Conclusion**

¶31. Because the trial court erred neither in denying Lenoir's motion in limine nor in denying Lenoir's motion for new trial, we affirm Lenoir's convictions and sentences.

¶32. **COUNT I: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS SUSPENDED, TWENTY (20) YEARS TO SERVE, AND FIVE (5) YEARS OF POST-RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED. COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS SUSPENDED, TWENTY (20) YEARS TO SERVE, AND FIVE (5) YEARS OF POST-RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED. COUNT III: CONVICTION OF CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS II AND III SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT I. APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $5,000, RESTITUTION IN THE AMOUNT OF $1,995 TO DOLGENCORP, LLC. d/b/a DOLLAR GENERAL #12911 AND $5 TO DOLLAR GENERAL #12911 AND $150 TO KAITLYNN CALCOTE AND COURT COSTS IN THE AMOUNT OF $ 419.50.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶33. Because Butler and Mathis were familiar with Lenoir, the majority correctly finds no error in the trial judge's decision allowing them to provide lay opinions about the perpetrator's identity.[4] But this conclusion does not dispose of this case. Lay opinion about

---

[4]*United States v. Jackman*, 48 F. 3d 1, 5 (1st Cir. 1995).

a perpetrator's identity will, in most cases, suffice to support a conviction. But not always. For instance, it would be absurd to suggest that a reasonable jury could find guilt beyond a reasonable doubt, where its verdict rested solely on the relevant, admissible testimony of a witness who looked at a video and opined that the defendant was the person in the video because both have big ears, when no other evidence suggests the defendant committed the crime.

¶34. Here, no reasonable juror could find guilt beyond a reasonable doubt based on this lay opinion testimony about the perpetrator's identity because the identifications are not sufficiently definite—containing reasonable doubt within themselves—and because the witnesses solely based their opinions on a foundation itself wrought with reasonable doubt. But to the few who read this dissent, do not take my word for it. Consider whether you believe a reasonable juror could determine guilt beyond reasonable doubt after viewing the video for yourselves.[5]

¶35. Actual, positive identification of the perpetrator in this case does not exist. Instead, the prosecution's case rested entirely on lay opinions that the person's clothes and walk were similar to those of the defendant, even though neither contained any discernable characteristic. We have the duty to review the evidence to be sure a reasonable juror could find it is capable of supporting a conviction beyond a reasonable doubt. Here, one could not.

¶36. The surveillance video of this robbery is so pixilated that no reasonable juror—or witness for that matter—could positively identify the defendant from the video alone. During

---

[5]https://courts.ms.gov/Newsite2/appellatecourts/sc/oawebcasts.php?vid=D6AOxI7FyB4

the two seconds the robber's face is exposed, that his face appears to be nothing more than a blur with no distinguishable characteristics. One cannot even determine the nose from the mouth. And during the rest of the video, both men are wearing masks. No one—no matter how familiar with Lenoir—could identify him by facial recognition.

¶37.  So, having no other evidence against Lenoir, and recognizing the video itself would get it nowhere, the State introduced opinions from Butler, Mathis, and Catchings to identify the defendant. This was the only evidence linking Lenoir to the robbery: the testimony of persons who looked at a pixilated video and testified that the person in the video was Lenoir because they recognized his clothes—the perpetrator was wearing an unremarkable black tee shirt and unremarkable black shorts, and apparently, Lenoir owned a black tee shirt and a pair of black shorts—and they recognized the way he walked. Nothing distinguishing or unusual can be discerned about the walk of the person in the video, and the majority identifies none. Not even a limp.

¶38.  And as for the black tee shirt and black shorts worn by the person in the video, neither contains a logo, emblem, tear, or any other feature that would distinguish these items of clothing from any other black tee shirts and shorts; and again, by its silence, I must assume the majority finds none.

¶39.  Catchings admitted that, during his interrogation of Lenoir, he denied being the robber. And while Catchings testified that Lenoir shrugged his shoulders during the interrogation when asked why he robbed the store, neither Catchings nor the majority has any

14

way of knowing what Lenoir meant by this gesture, particularly in light of his consistent denials that he had anything to do with the crime.

¶40. In this case, there are no eyewitnesses. There is no forensic evidence. No fingerprints, DNA, or hair. So we are left with a conviction based solely on witnesses who looked at a pixilated video and testified that the person in the video had clothes like Lenoir and walked like Lenoir. And both the clothes and the walk were not distinctive in any way. That evidence, in my view, is insufficient for a finding beyond a reasonable doubt of guilt. No reasonable juror could reject the doubt inherent in opinions based on such ambiguous criteria.

¶41. Lenoir moved for a directed verdict at the close of the prosecution's case-in-chief; however, he did not raise the sufficiency of the evidence on appeal—although his weight-of-the-evidence argument reads more like a sufficiency-of-the-evidence argument, challenging the State's proof of his identity. So the only avenue for review is the plain-error doctrine.[6] "For the plain-error doctrine to apply, there must have been 'an error that resulted in a manifest miscarriage of justice or seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[7]

¶42. Further, when assessing the legal sufficiency of a conviction, this Court determines "'whether after viewing the evidence in the light most favorable to the prosecution, any

_____

[6] ***Green v. State***, 183 So. 2d 28, 30 (Miss. 2016) (citing ***Holmes v. State***, 798 So. 2d 533, 534 (Miss. 2001); Miss. R. Evid. 103(d); Miss. R. App. P. 28(a)(3)).

[7] ***Hall v. State***, 201 So. 3d 424, 428 (Miss. 2016) (quoting ***Brown v. State***, 995 So. 2d 698, 703 (Miss. 2008)).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[8] This Court must reverse a conviction "[i]f facts and inferences considered by the Court 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'"[9]

¶43.    I do not contend that the jury was not free to believe the opinions of Butler, Mathis, and Catchings.  The jury certainly could accept as true that the witnesses actually believed Lenoir was the man in the video and, in fact, I assume they did.  But, given the facts in this case, those opinions, standing alone, are insufficient to lead any reasonable juror to conclude beyond a reasonable doubt that Lenoir committed the crime.

¶44.    There can be no greater miscarriage of justice than to allow a conviction to stand based on wholly insufficient evidence. Accordingly, I would reverse Lenoir's convictions of armed robbery and conspiracy to commit armed robbery and render judgment in his favor.

   **KITCHENS AND KING, JJ., JOIN THIS OPINION**.

---

[8] ***Graham v. State***, 185 So. 3d 992, 998 (Miss. 2016) (quoting ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005)).

[9] ***Id.*** (quoting ***Bush***, 895 So. 2d at 843).