# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00452-COA

**DONTREY LAMARK CRAIG**                                                **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2018 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., GREENLEE AND McCARTY, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1.     Following a jury trial, Dontrey Craig was convicted of kidnaping and sexual battery. The circuit court denied Craig's motion for judgment notwithstanding the verdict or a new trial and sentenced him to consecutive terms of ten years and fifteen years in the custody of the Department of Corrections. On appeal, Craig argues that the evidence was insufficient to sustain his convictions and that the jury's verdict was against the overwhelming weight of the evidence. Craig's arguments are without merit. Therefore, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Craig and Sabina[1] participated in a religious marriage ceremony but never sought a state marriage license. They had two children together. They separated in January 2015, and Sabina moved to Biloxi without Craig in June 2015.

¶3.     On July 18, 2015, Craig went to Sabina's apartment. Craig told Sabina that their children wanted to see her. However, Sabina knew that Craig did not have their children because she had received a phone call earlier that day informing her that the children were in the custody of the Department of Human Services. Sabina testified that she did not invite Craig into her apartment but he came inside anyway. Sabina called the police after Craig entered her apartment. Craig began to accuse Sabina of cheating on him and took away both of her cell phones. Craig left with Sabina's cell phones before the police arrived.

¶4.     Sabina then left her apartment and went to see her pastor for Bible study. After Bible study, she bought a new cell phone and groceries and then returned to her apartment. Later that night, while outside her apartment, Sabina saw Craig, and Craig again entered her apartment. Sabina asked Craig to leave several times, but he began yelling at her and asking her what she told the police. She lied and told him that she had not said anything about him to the police. Craig became angrier and told her that if she "tried to act smart" he would choke her. Then he made her sit on the couch and demanded that she give him her new cell phone. She said that she did not have a phone because he had taken her phones. However, Craig had seen the box for her new phone in the kitchen, and Sabina eventually gave him her

---

[1] The Court of Appeals does not identify sexual assault victims. In the interest of the victim's privacy, the pseudonym used in the parties' briefs has been substituted in place of the victim's name.

2

new phone. Craig began to throw Sabina against the wall, pull her hair, and twist her arm. During the assault, Craig repeatedly accused Sabina of cheating on him, and he ransacked her apartment looking for evidence that a man was living there.

¶5. Around this time, Sabina's neighbor, Melinda Mitchell, woke to the sounds of someone in distress. She could tell that it was a female's voice coming from Sabina's apartment. Mitchell "banged on the wall" in an attempt to get Sabina's attention. When he heard Mitchell beating on the wall, Craig immediately turned off all the lights in the apartment. Mitchell decided to call the police, and two officers arrived a few minutes later. Sabina saw flashlights outside and heard the officers knocking on her apartment door. Craig then made Sabina sit on the stairs in the apartment, and he covered her mouth and nose with his hands. Sabina testified that she could barely breathe and struggled to break free. When the officers continued knocking, Craig took Sabina upstairs and made her sit in the hallway. He held something to her neck and told her that if she made a noise he would kill her and "choke the blood out of her mouth."

¶6. When no one answered the door, the officers went to talk to Mitchell. Mitchell told them that Sabina's boyfriend had a white Monte Carlo. The officers were unable to locate the car in the parking lot. The officers told Mitchell to call them if she saw or heard any activity in the apartment. After the officers left, Mitchell went back to sleep, but later she woke to the sound of "a lot of moving around." She testified, "It sounded like moving furniture. So either they were moving furniture or it was a scruffle." Mitchell could hear Sabina saying, "Stop. Just leave, just leave." Mitchell did not call the police.

3

¶7. After the officers left the apartment, Craig forced Sabina into the bedroom. When Craig went to look out the window to see if the officers were gone, Sabina tried to run downstairs. Craig grabbed her leg, and Sabina fell in the middle of the hallway. Craig dragged her back into the bedroom and put her on the bed. He took off her clothes and forced himself inside of her. Sabina repeatedly begged Craig to stop and tried to escape. But Craig held her down and said, "[T]his [is] mine, I can take it when . . . I want to." Sabina testified that Craig raped her several times throughout the night. She also stated that Craig would not let her out of his sight, not even to use the bathroom.

¶8. The next morning Sabina suggested that she and Craig go downstairs and make breakfast. She was trying to gain his trust so that she could escape. Once they were downstairs, Sabina grabbed a knife and told Craig that he needed to leave immediately. But he "came at her," and she dropped the knife. Then Craig began to hit Sabina over the head with an object, and she began bleeding. She tried to run to the door, but Craig grabbed her. Sabina began screaming and then heard Mitchell knocking on the door. Mitchell had heard the noises coming from Sabina's apartment and walked over to help. When Mitchell walked next door, she thought she saw Sabina standing at the window and knew that she needed help. Mitchell went back into her apartment to get a hammer. When Mitchell left, Sabina managed to open the front door, and Craig ran outside. Sabina then ran out the back door of her apartment and went to Mitchell's apartment. Mitchell could tell that Sabina had been "roughed up" and immediately called 911.

¶9. When the police arrived, they photographed Sabina's injuries and took her to the

4

hospital for a sexual assault examination. A nurse, Judy Bluford, performed the exam and testified at trial. Bluford testified that Sabina had several abrasions on her face and arms and dried blood on her face and clothes. Bluford also observed that Sabina had dried fluid secretions on her chest and near her vagina, which Bluford swabbed for DNA testing. Bluford was unable to collect a swab from Sabina's vagina due to heavy menstrual bleeding, but the swab from Sabina's chest contained both Craig's DNA and Sabina's DNA.

¶10. Craig was arrested and charged with kidnaping and sexual battery. After a jury trial, Craig was convicted of both crimes. Craig filed a motion for judgment notwithstanding the verdict or a new trial, which the trial court denied. The court then sentenced Craig to consecutive terms of ten years for kidnaping and fifteen years for sexual battery.

¶11. On appeal, Craig argues that the evidence was insufficient to sustain his convictions and that the jury's verdict is against the overwhelming weight of the evidence. Craig's arguments are without merit. Therefore, we affirm.

## ANALYSIS

¶12. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶13. When we review the denial of a motion for a new trial, we "view the evidence in the

light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.* We only review the trial judge's decision to deny a new trial for an abuse of discretion. *Id.* at 292 (¶21).

## I.    Kidnaping

¶14.    The crime of kidnaping is committed whenever "[a]ny person, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will." Miss. Code Ann. § 97-3-53 (Rev. 2014). The State presented ample evidence to convict Craig of kidnaping. Sabina testified that, in addition to raping and beating her, Craig forcibly and repeatedly prevented her from escaping the apartment. Craig also forced her up the apartment's stairs and into her bedroom. He also held her, with his hand tight over her mouth and nose, and threatened to kill her if she made any noise while the police were outside. For over twelve hours, Craig held Sabina in the apartment and would not let her out of his sight. In short, Sabina clearly testified that Craig forcibly confined her against her will. Her testimony was corroborated by physical evidence and was sufficient to sustain Craig's conviction for kidnaping. Twice in recent years, our Supreme Court has affirmed kidnaping convictions on comparable facts. *See Green v. State*, No. 2017-KA-00770-SCT, 2018 WL 5076318, at *5 (¶18) (Miss. Oct. 18,

6

2018); *Graham v. State*, 185 So. 3d 992, 1003-04 (¶¶33-34) (Miss. 2016). Thus, Craig's claim that the evidence was legally insufficient is without merit. His claim that the verdict was against the weight of the evidence is also without merit, as there was no evidence to contradict Sabina's testimony or the other evidence.

## II.    Sexual battery

¶15.    Craig also argues that the evidence was insufficient to convict him of sexual battery and that the jury's guilty verdict was against the weight of the evidence. He cites one case, *Easterling v. State*, 120 Miss. 404, 82 So. 306 (1919). The *Easterling* opinion states, in full, as follows:

> The appellant, Henry Easterling, was convicted of an assault with intent to commit rape upon his former wife, Nora Easterling, and appeals here.
>
> We have carefully read the evidence in this case, and after a thorough and full consideration of the facts presented by the state upon which the conviction rests we are convinced that the proof falls short of being sufficient to establish the charge beyond a reasonable doubt.
>
> We see no good purpose to be served by setting out in detail the peculiar facts of this case as disclosed by the record; and we deem it ample to say that under the facts and singular circumstances of the alleged attempt we are warranted in saying, as a matter of law, the appellant had no felonious design to commit the crime of rape. What he did amounted only to a strenuous effort to persuade his ex-wife to yield to his sexual desires. In passing upon the facts of a charge of rape, or attempt, the particular facts and circumstances of each case are to govern. No precise rule as to what acts will constitute rape, or an attempt, can be stated. This is to be determined by the facts of each case. The proof of criminal intent on the part of appellant is insufficient here for conviction.
>
> Reversed, and appellant discharged.

*Id.* at 405-06, 82 So. at 304.

7

¶16. On appeal in this case, Craig argues:

> Since there was no proof of vaginal trauma, it is respectfully suggested that, as in *Easterling*, Craig's attempt to reconcile did not amount to sexual battery rather was just "a strenuous effort to persuade" Sabina to yield to reconciliatory desires. Craig respectfully requests that the Court find the evidence of sexual battery to be insufficient under *Easterling*, *supra*, and reverse and render the sexual battery conviction.

¶17. Craig's argument is without merit. We do not know what "peculiar facts" were at issue in *Easterling* because the Supreme Court declined to describe them. *Easterling*, 120 Miss. at 405, 82 So. at 304. But the evidence *in this case* clearly showed much more than "a strenuous effort to persuade." *Id.* "A person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a]nother person without his or her consent . . . ." Miss. Code Ann. § 97-3-95(1)(a) (Rev. 2014). Sabina testified that Craig repeatedly penetrated her vaginally without her consent and over her objections. Nurse Bluford explained that she was unable to collect DNA evidence from Sabina's vagina or detect vaginal trauma because of Sabina's heavy menstrual bleeding. However, Bluford noted that Sabina had numerous bruises and dried blood on her face and clothes. Viewing the evidence in the light most favorable to the State, there was ample evidence to convict Craig of sexual battery, and the jury's verdict was not against the weight of the evidence.

## CONCLUSION

¶18. The State presented sufficient evidence to support Craig's convictions, and the jury's verdict is not against the overwhelming weight of the evidence.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL,**

8

**McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**