# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01371-COA

**DEANGELO MORMENT A/K/A DEANGELO MONTREL MORMENT A/K/A DEANGELO M. MORMENT**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

DATE OF JUDGMENT:                08/02/2018
TRIAL JUDGE:                     HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:       HINDS COUNTY CIRCUIT COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:         EUGENE CARLOS TANNER III
                                 JANE E. TUCKER
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:               ROBERT SHULER SMITH
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 06/09/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    In 2013, a shooting occurred at the "Gas Stop" in Jackson, Mississippi. Kamron Conner and Jessica Keys were shot. In 2014, a grand jury for the First Judicial District of Hinds County indicted DeAngelo Morment, Renshaw Dozier, and Frederick Smith Jr. for the aggravated assaults of Conner and Keys. Morment's first trial ended in a mistrial, but he was found guilty of two counts of aggravated assault after his second trial. *See* Miss. Code Ann. § 97-3-7(2) (Supp. 2013). The court sentenced Morment to two terms of twenty years

(twenty years for each count), with five years suspended, fifteen years to serve, and five years of supervised probation for each count, for a total of thirty years to serve, in the custody of the Mississippi Department of Corrections.

¶2. Subsequently, the court denied Morment's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Now Morment appeals, claiming (1) the jury's verdicts were not supported by sufficient evidence, (2) the jury's verdicts were against the overwhelming weight of the evidence, (3) the court erred by admitting hearsay, (4) the court erred by allowing a detective to identify him in a surveillance video, and (5) it was plain error for the prosecutor to argue during closing arguments that Crime Stoppers' tips were substantive evidence of his guilt. Within the closing-argument issue, Morment also argues that evidence of the Crime Stoppers' tips was inadmissible hearsay and violated his right to confrontation. Finding no reversible error in the issues presented on appeal, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Around 1:30 a.m. on July 13, 2013, Jessica Keys and her friend, Vanesha Taylor, went to the Gas Stop on North State Street in Jackson, Mississippi. While they were there, Keys saw Kamron Conner and spoke with him. A purple Buick then drove up. Three men jumped out and started shooting. Keys testified that she attempted to take cover under a vehicle but was shot once in her left leg and twice in her right leg. Keys did not know the men, but she testified that one held his arm while he was shooting. As the surveillance video played for the jury, Keys pointed out what she believed was a white bandage on the man's arm. Keys did not know the motive for the shooting, but she testified that the men did not seem

2

concerned about whom they shot. According to Keys, all three men shot in her direction, and it was possible that any one of them could have shot her at any given time.[1]

¶4. Brandon Williams, an officer with the Jackson Police Department (JPD) testified that when he arrived at the scene, he found numerous shell casings and bullet holes. Mamie Barrett, an investigator with JPD's mobile crime scene division, testified that there were approximately twenty-seven spent shell casings of three different sizes as well as some projectile fragments at the scene. In addition to Keys being shot three times, Investigator Barrett testified that Conner was also shot. However, Conner did not testify at Morment's second trial.

¶5. Rozerrio Camel was assigned to investigate the case. Detective Camel testified that Morment, Dozier, and Smith became suspects, and he believed that the motive for the shooting was retaliation against Conner for a prior shooting. Detective Camel explained that on June 25, 2013, a shooting occurred at the Cedar Stone Apartments. During that shooting, Morment was shot in his left forearm and shoulder area, and his cousin, Orlando Morment, was shot and killed.

¶6. According to Detective Camel, Morment's family suspected that Conner was involved in the Cedar Stone shooting. Morment's cousin, Kendall Morment, told Detective Camel that Conner called him one hour after the shooting. Kendall asked Conner where Orlando was, and Conner responded that he "didn't have nothing to do with that."[2] However, Kendall

---

[1] Keys identified one of the men as Fredrick Smith.

[2] Detective Camel testified that he also overheard this conversation.

told Detective Camel that Morment told him that Conner was the first person he saw after the shooting and that Conner drove him to the hospital. Conner later returned to the apartment complex "as if he was concerned about Orlando." But Kendall believed Conner was involved in the shooting.[3]

¶7.     Detective Camel testified that he had "been doing this for a long time" and "[could] tell when somebody . . . may want to try to handle something [on their own]." When he visited Morment in the hospital after the Cedar Stone shooting, Detective Camel thought Morment might try to take matters into his own hands. He told Morment to let the police handle it and advised him not to do anything that would get himself in trouble.

¶8.     When Detective Camel reviewed the surveillance video from the Gas Stop shooting, which had occurred less than three weeks after the Cedar Stone shooting, he noticed that a pillow fell to the ground when one of the shooters got out of the car and that the shooter kept his left arm close to his body. Detective Camel further testified that the shooter's arm never moved. Although the bandage on Morment's arm was larger when he was in the hospital, Detective Camel testified that the shooter in the surveillance video was wearing a bandage on the same arm. Detective Camel also indicated that the shooter's hairstyle and stature was similar to Morment's.

¶9.     According to Detective Camel, he considered all the evidence before concluding that Morment was one of the Gas Stop shooters. He explained that he took into account the

---

[3] According to Detective Camel, Andrea Lowe and Diallo Vaughn were developed as suspects for the Cedar Stone shooting. Vaughn gave a statement, which did not implicate Conner. However, Conner drove Lowe and Vaughn to the apartment complex.

family's assertions, Crime Stoppers' tips that indicated that Morment retaliated for the prior shooting, and the surveillance video. Detective Camel testified that he had "no reason to even try to make up something or try to put something on [Morment]." And he explained that he did not want Morment to be in this type of situation.

¶10. After the State rested its case-in-chief, James Griffin testified on behalf of the defense. Griffin owned Griffin Media Forensics and testified as an expert in audio and video enhancement. According to Griffin, the Attorney General's Office gave him the surveillance footage from the Gas Stop shooting and asked if he could clarify certain frames so that they could see faces better. Because the image was less than standard definition, Griffin testified that he was not able to obtain a clear identification of any of the individuals. On cross-examination, Griffin acknowledged that an individual may be identified in ways other than by his facial features. And he testified that the shooter in the video appeared to have something white on his arm that was consistent with a bandage. But he also testified that it could have been something else.

¶11. After considering the evidence presented at trial, the jury found Morment guilty of both counts of aggravated assault. On appeal, Morment claims (1) the jury's verdicts were not supported by sufficient evidence, (2) the jury's verdicts were against the overwhelming weight of the evidence, (3) the court erred by admitting hearsay evidence concerning a possible motive for the shooting, (4) the court erred by allowing Detective Camel to identify him in a surveillance video, and (5) it was plain error for the prosecutor to argue during closing arguments that the Crime Stoppers' tips were evidence of his guilt. Within the

5

closing-argument issue, Morment also argues that evidence of the Crime Stoppers' tips was inadmissible hearsay and violated his right to confrontation.

## DISCUSSION

### I.       Sufficiency of the Evidence

¶12.    "When reviewing a challenge to the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Kidd v. State*, 284 So. 3d 777, 783 (¶20) (Miss. Ct. App. 2019) (quoting *Reynolds v. State*, 227 So. 3d 428, 436 (¶32) (Miss. Ct. App. 2017)).  The issue before this court is not whether we would have found the defendant guilty; "rather, the conviction must be affirmed if there was sufficient evidence for any rational trier of fact to have rendered a guilty verdict." *Id*. (internal quotation marks omitted).

¶13.    At trial, the State presented evidence that Keys and Conner were shot at the Gas Stop on July 13, 2013.  Keys testified that one of the men held his arm while he was shooting. And as the surveillance video played for the jury, Keys pointed out what she believed was a white bandage on the man's arm.  According to Keys, all three men shot in her direction, and it was possible that any one of them could have shot her at any given time.

¶14.    Detective Camel explained why he believed the Gas Stop shooting was retaliation for a prior shooting.  Detective Camel testified that on June 25, 2013—less than three weeks before the Gas Stop shooting—Morment was shot, and his cousin was killed.  According to Detective Camel, Morment's family believed that Conner was involved in the earlier

shooting. And Detective Camel testified that when he met with Morment while he was in the hospital, he was concerned that Morment might try to take matters into his own hands.

¶15. Detective Camel also testified that when he reviewed the surveillance video from the Gas Stop shooting, he noticed that a pillow fell to the ground when one of the shooters got out of the car and that the shooter kept his left arm close to his body. He further testified that the shooter's arm never moved. Although the bandage on Morment's arm was larger when he was in the hospital, Detective Camel testified that the shooter appeared to be wearing a bandage on the same arm. Additionally, Detective Camel indicated that the shooter's hairstyle and stature were similar to Morment's. Finally, Detective Camel testified that he had received Crime Stoppers' tips indicating that Morment had retaliated for the earlier shooting.

¶16. After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Therefore, this issue is without merit.

## II. Weight of the Evidence

¶17. "When reviewing a challenge to the weight of the evidence, 'we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id*. at 783-84 (¶24) (quoting *Lloyd v. State*, 228 So. 3d 953, 956 (¶9) (Miss. Ct. App. 2017)). "The evidence must be viewed 'in the light most favorable to the verdict, and we must affirm unless the trial court abused its discretion in denying a new trial.'" *Id*. Furthermore, this Court has held that "[a]ssessing

witness credibility, weighing evidence, and resolving any conflicts in the evidence [is] the jury's responsibility." *Dennis v. State*, 271 So. 3d 722, 727 (¶20) (Miss. Ct. App. 2018).

¶18. Considering the evidence presented, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.

### III. Hearsay

¶19. Morment claims the trial court erred by allowing the State to introduce hearsay evidence. Specifically, Morment takes issue with Detective Camel's testimony about the Crime Stoppers' tips and conversations that Detective Camel overheard or had with his (Morment's) family members. Morment also takes issue with Detective Camel's testimony that he warned him (Morment) not to take matters into his own hands.

¶20. "The standard of review regarding admission or exclusion of evidence is abuse of discretion." *Liddell v. State*, 281 So. 3d 34, 37 (¶5) (Miss. Ct. App. 2019) (quoting *Tillis v. State*, 176 So. 3d 37, 45 (¶15) (Miss. Ct. App. 2014)). This Court has held that "[s]tatements do not constitute hearsay when admitted to explain an officer's course of investigation . . . ." *Birkley v. State*, 203 So. 3d 689, 696 (¶16) (Miss. Ct. App. 2016) (quoting *Fullilove v. State*, 101 So. 3d 669, 675 (¶20) (Miss. Ct. App. 2012)). Furthermore, "[o]ut-of-court statements made to police during the course of their investigations are admissible." *Id*.

¶21. The statements by Morment's family and the Crime Stoppers' tips were made to Detective Camel or other law enforcement during the course of the investigation. Additionally, Detective Camel's testimony was admitted to explain his course of

investigation. Finally, testimony of Morment's family's belief that Conner was involved in the prior shooting of Morment was not offered to prove the truth of the matter asserted but as evidence of motive. It was therefore admissible. This issue is without merit.

### IV. Surveillance-Video Identification

¶22. Morment claims the trial court erred by allowing Detective Camel to identify him in the surveillance video because the identification was not reliable.

¶23. Mississippi Rule of Evidence 701 provides, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

¶24. In *Lenoir v. State*, 222 So. 3d 273 (Miss. 2017), "a witness was presented to give his opinion of whom he believed was portrayed in a surveillance video of an armed robbery." *Dennis*, 271 So. 3d at 727-28 (¶23) (citing *Lenoir*, 222 So. 3d at 275 (¶6)). The testimony was admitted because the witness was familiar with Lenoir and specifically the way he walked. *Id*. at 728 (¶23). "The witness opined that it was Lenoir in the surveillance video." *Id*. "The supreme court upheld the admission of the testimony and held that 'Lenoir's claims of lack of sufficient familiarity with how he walked and bias against him were weight-and-credibility issues for him to expose on cross-examination, and not reasons for this Court to reverse the trial court's evidentiary ruling.'" *Id*. (quoting *Lenoir*, 222 So. 3d at 278 (¶18)).

¶25. In this case, Detective Camel met with Morment prior to the Gas Stop shooting.

When Detective Camel reviewed the surveillance video from the shooting, he noted the bandage on the shooter, the way the shooter held his left arm, and the shooter's stature and hairstyle. We find that the trial court was within its discretion to admit testimony by "a witness who has greater familiarity with the defendant's appearance than the jury could possess." *Lenoir*, 222 So. 3d at 277 (¶15).

¶26. Furthermore, our supreme court has held that "the *level* of familiarity . . . goes to the weight and credibility of the testimony, not its admissibility." *Id*. at 277 (¶16) (emphasis added). As discussed, we cannot find that the jury's verdict in this case was contrary to the overwhelming weight of the evidence. Therefore, this issue is without merit.

## V. Closing Argument

¶27. Finally, Morment claims it was plain error for the prosecutor to argue during closing arguments that the Crime Stoppers' tips were substantive evidence of his guilt. Within the same issue, he argues that evidence of the tips was inadmissible hearsay and violated his right to confrontation.

¶28. This Court has held that "[a]s applied to closing arguments, plain error may only be found when the substance of the statement is out of bounds for closing arguments." *Keys v. State*, 219 So. 3d 559, 568 (¶31) (Miss. Ct. App. 2017) (quoting *Mitchell v. State*, 21 So. 3d 633, 642 (¶31) (Miss. Ct. App. 2008)). Our supreme court has alluded to "out of bounds" as follows:

> Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. The standard of review that appellate courts must apply to lawyer misconduct

10

during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.

*Bailey v. State*, 214 So. 3d 288, 297 (¶34) (Miss. Ct. App. 2016) (quoting *Mitchell*, 21 So. 3d at 642 (¶31)).

¶29. Morment takes issue with the following portion of the prosecutor's argument:

> You had Crime-Stopper tips that came in that said, hey, Deangelo Morment shot - - they did it. Not just one tip, he said multiple tips. Does it matter who called in to give a tip? That's why they got a tip line, that's why it's anonymous; because people are afraid to come forward.

¶30. However, at trial, Detective Camel testified that the Crime Stoppers' tips indicated that Morment retaliated for the prior shooting. This Court has held that a "prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Miskell v. State*, 230 So. 3d 345, 357 (¶43) (Miss. Ct. App. 2017). Furthermore, Morment did not object to the prosecutor's comment. We find that the prosecutor's comment was not "out of bounds" for closing argument. The comment did not "create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Bailey*, 214 So. 3d at 297 (¶34). Therefore, the prosecutor's comment did not constitute plain error.

¶31. As discussed, Detective Camel's testimony was not inadmissible hearsay. Additionally, this Court has held that "[a] criminal defendant's argument is procedurally barred where he fails to make a contemporaneous Sixth Amendment (Confrontation Clause) objection to the admission of testimony and does not raise an objection in his post trial motions." *Smith v. State*, 235 So. 3d 1441, 1445 (¶12) (Miss. Ct. App. 2018) (citing *Ezell*

11

*v. State*, 132 So. 3d 611, 612 (¶3) (Miss. Ct. App. 2013)). "A general hearsay objection is insufficient to preserve an alleged Confrontation Clause violation for appellate review." *Id*. (citing *Briggs v. State*, 16 So. 3d 696, 698-99 (¶11) (Miss. Ct. App. 2008)). Morment failed to make a Sixth Amendment objection to the admission of Detective Camel's testimony either at trial or in a post-trial motion.[4] Morment's confrontation claim is therefore procedurally barred.[5]

¶32. **AFFIRMED.**

**CARLTON, P.J., WESTBROOKS, LAWRENCE AND C. WILSON, JJ., CONCUR. BARNES, C.J., AND J. WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., NOT PARTICIPATING.**

---

[4] Prior to trial, Morment raised the issue of confrontation in a "Motion in Limine Regarding Hearsay Statements to Mother of Jessica Keys" and in a "Motion in Limine Regarding Hearsay Statements of Toronta Fields." However, there is no evidence that these particular hearsay statements were admitted at trial.

[5] On appeal, Morment does not argue that the admission of Detective Camel's testimony was plain error. Rather, he asks this Court to review the prosecutor's argument for plain error. We have reviewed the argument, and as discussed, we do not find that plain error occurred.